JUSTICE TRIEWEILER
concurring.
¶34 Burhan Mallak was charged -with the illegal sale of drugs to an undercover police officer in 1988. He pled guilty and was sentenced on September 28, 1989. He discharged his sentences on September 28, 1994.
¶35 It is undisputed by the State that at the time of his guilty pleas, Mallak was mentally retarded and had an English vocabulary equivalent to a four-year old. Furthermore, he was not advised that deportation was a consequence of his plea, no interpreter was present during the court’s colloquy prior to the entry of his plea and he obtained nothing favorable from the State as consideration for his plea.
¶36 Mallak’s impaired intellectual capacity is further evidenced by the fact that he has continued to receive mental health treatment from the time he entered his plea until his Petition for Postconviction Relief was filed.
¶37 In 1999 - five years after discharging his sentence - Mallak applied for citizenship. However, when the U.S. Immigration and Naturalization Service learned of his 1989 conviction, it began deportation proceedings. Mallak then applied for asylum and in support of his application, presented evidence that he would be executed for political reasons upon his return to his native Iraq and that he would have to leave his wife, four children, two brothers and mother, all of whom are now U.S. citizens.
¶38 Therefore, as this case is presented to us, a marginally retarded immigrant who speaks poor English, pled guilty to an offense for which he claims to have been entrapped without knowing that deportation and possibly execution was a consequence. Nevertheless, he has served his debt to our society by fully discharging his sentence. Now, upon learning of the full consequences to himself and his family, he seeks to set aside the guilty plea, which was entered unknowingly and without adequate information, at a point in time when there will be no practical consequences to the citizens of Montana because he has already served his sentences.
¶39 Mallak argued in the District Court that his petition should be treated as a motion to set aside his guilty plea and viewed as timely *324 due to the fact that there is no specific time limit for such a motion. The State had notice of his claim and fully briefed that issue. The District Court addressed that claim on its merits and set forth in its order the legal rationale for its conclusion. However, the Chief Justice would have us ignore the merits of that claim, cause Mallak to abandon his wife and four children and face possible execution, because he made only passing reference to the claim in his brief on appeal. While she concedes that the alternative (abandonment of his family and possible execution) are “sad and unfortunate,” she cannot condone such “unwise precedent for future cases.”
¶40 I would submit that if any future case presents even remotely similar facts to those in this case, then the precedent established by this case is wise and should certainly be followed. I would also submit that when procedure blinds us to substance at the expense of families and human life, then we will not be worthy of the titles bestowed upon us by those same citizens for whom the Chief Justice expresses concern. Therefore, in spite of the Chief Justice’s disappointment with this “happy ending,” I gladly concur with the majority’s opinion.
¶41 Furthermore, I would have reversed the District Court and arrived at the same result reached by the majority based on the “fundamental miscarriage of justice” exception to the statute of limitations which applies to petitions for post-conviction relief. Although I realize that exception has in the past been limited to subsequent proof of actual innocence, I believe the facts in this case also cry out for its application.
¶42 For these reasons, I concur completely in the majority opinion and concur with the result of the majority opinion on an additional and separate basis.